IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.

Case No. 2:25-cr-44

GRACE ELIZABETH PARADIS,

Defendant.

FILED
IN OPEN COURT

OCT 2 3 2025

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## STATEMENT OF FACTS

The United States and the defendant, GRACE ELIZABETH PARADIS ("the

defendant"), agree that at trial, the United States would have proven the following facts beyond a

reasonable doubt with admissible and credible evidence:

1.      At all times relevant to the offense conduct, the defendant lived in the Eastern

District of Virginia.

2.      The defendant is a relative of Minor Victim 1 ("MV1") and Minor Victim 2

("MV2").

3.      At all times relevant to the offense conduct, MV1 and MV2 lived primarily in the

Eastern District of Virginia.

4.      At all times relevant to the offense conduct, the co-defendant, Cory Richard

HAMBLEY, lived in the Eastern District of Virginia.

5.      The defendant and HAMBLEY were previously in a dating relationship.

6.      In or around November 2022, approximately 8 to 10 years after the time they last

spoke, HAMBLEY sent the defendant a text message. From in or around November 2022 to in

-1-



or around January 2023, they exchanged hundreds of SMS and MMS messages utilizing the internet.

7. On or about January 5, 2023, HAMBLEY asked the defendant to install an application on her cell phone called Signal. Later on the same day, the defendant installed Signal on her cell phone.

8. Signal is a cross-platform messaging application that uses end-to-end encryption for text messages and voice and video calls. End-to-end encryption means that only the sender and intended recipient can access the contents of messages and media. No third parties, including the service provider or any cloud server, has access to the decryption keys needed to view users' messages and media intelligibly. Decrypted data is stored locally on users' devices where it may be accessed by law enforcement. Services that provide end-to-end encryption, including Signal, are widely used by individuals to commit, facilitate, and conceal crimes, including crimes related to child exploitation.

9. From on or about January 5, 2023 to on or about October 22, 2024, most, if not all, of the electronic communications between the defendant and HAMBLEY were sent through Signal. Specifically:

    a. From on or about January 5, 2023 to on or about January 14, 2023, the defendant and HAMBLEY communicated through both Signal and SMS messages.

    b. From on or about January 15, 2023, to on or about October 22, 2024, the defendant and HAMBLEY apparently communicated exclusively through Signal. No SMS messages between them after January 14, 2023 were recovered.

10. In SMS messages dated January 5, 2023, HAMBLEY and the defendant discussed an internet-enabled camera that HAMBLEY purchased and had sent to the defendant.



The defendant told HAMBLEY, "I'm afraid to ask what the camera is for..." HAMBLEY said, "You set it up once and leave it up.. then you tell me the log in and [password]."

11. On January 7, 2023, HAMBLEY continued to urge the defendant to set up the camera, telling her on Signal, "I just wanna watch you and see you."

12. On January 10, 2023, HAMBLEY told the defendant on Signal, "I like incest stuff.. even if it's just flashing and pics of you with [MV1 and MV2] . . . Showing your pussy to the camera with [MV1 and MV2] in the background or next to you or with you." [1] He continued, "I think that would be the best birthday present . . . Seeing you in the shower with [MV1 and MV2]." The defendant responded, "Well, you'll have to hold on to that thought for me . . . Gotta shower and get ready to go the hospital." At the time, MV1 was five years old and MV2 was nine years old.

13. HAMBLEY and the defendant continued to argue over whether the defendant would set up the camera. Referring playfully to HAMBLEY in the third person, the defendant said on January 29, 2023, "[M]y boyfriend has a dirty secret... he's been talking about marriage and children for 20 years, but we don't have either of those . . . I think a man who wants husband and daddy privileges, should keep a promise . . . Otherwise, how do I know he's telling the truth and I'm not getting played with and tossed away like a used up toy?"

14. HAMBLEY responded, referring to MV1 and MV2, "I just wanna see if their pussy is a[s] pretty as yours . . . It's not like i asked to taste them." The defendant replied, "They don't look like me. . . . But if Daddy wants Daddy's privileges, Daddy has to earn it. . . . Don't

---

[1] For ease of reading and economy of space, ellipses are used to combine the content of more than one message into a single quotation. Periods not separated by nonbreaking spaces are original to the sender's message.

you still want to have babies with me Daddy? Babies you can take family showers and pictures with?"

15.     During this conversation and others, the defendant was conscious that HAMBLEY's requests exposed her to criminal liability. On January 29, 2023, she told HAMBLEY, "I risk everything, my whole life, for even one second of the wrong thing on film[,] but what are you willing to give in return that would keep us both out of jail? One photo, all it takes and no more job, no more retirement, everyone finds out about it . . . I love you. I don't want to disagree. I want you to be happy. I want to be happy too. I just want to be happy AND together." She added, "I'm not saying no."

16.     In February 2023, the defendant told HAMBLEY that she was behind on paying rent. The defendant's financial difficulties provided HAMBLEY leverage over the defendant. On February 10, 2023, HAMBLEY said that he wanted to receive pictures of "lingerie," suggesting, referring to MV1 and MV2, "I wanna see you wearing [MV1 and MV2's] panties . . . Stretch them.. maybe ya'll can get matching stuff." HAMBLEY asked the defendant, "Could you send pics if i sent gifts?" The defendant replied, "Yes and no." HAMBLEY said, "You could say [']I got us matching undies... try them on and we'll take a picture together.[']" The defendant said that HAMBLEY's paying her rent draw less attention than "fancy underwear."

17.     HAMBLEY asked how much the defendant owed in rent. The defendant said that she owed "[t]he whole thing." HAMBLEY asked, "How much you behind[?]" The defendant said, "Rent is $1640. Plus 10% for the late fee. So $1804, Due by tomorrow at 9am or another $211 added on top."

18.     HAMBLEY asked, "What would i get if you got 2k tomorrow[?]" They agreed that the defendant's rent was a significant amount of money. HAMBLEY said, "Well.. if you're



willing to do some [images with MV1 or MV2] photo playtime.. i could probably get a check to you tomorrow.. or stop at the bank for cash." The defendant responded, "I'm not saying I won't work with you about this or that, or whatever . . . But you have to remember the hard boundaries, and why they're there[.]"

19.    Rather than protecting MV1 and MV2 from HAMBLEY's request that she abuse them, the defendant focused on the likelihood of the scheme being revealed by one of the victims. She told HAMBLEY, "I take a photo and [MV1 or MV2] thinks it's weird, asks anyone about it, and BOOM. Big problem. . . . I've been teaching [MV1 or MV2] self defense and a few other things since… so it's going to set off her instincts that something is fucked up." The defendant said that her "IQ is 164, and [MV1 is] just as smart if not smarter than I am . . . So when I tell you to be careful, I'm not kidding."

20.    HAMBLEY proposed ways for the defendant to exploit MV1 and MV2 without being detected. HAMBLEY said, "You could use Benadryl, or roofies.. but my ask is for the webcam to be turned on so i can watch you and [MV1] take pictures together." The defendant responded, "It's like testing to see if you can get me to get myself put in jail just to prove I'm willing to do anything you ask[.]" HAMBLEY asked, "Would you risk jail for me[?]" He added, "[W]e both know you're smart enough to be able to get [MV1 and MV2] to do things in secret[.]" The defendant said, "If I had a few months? Could I figure something out? Yeah, probably. But I don't have a few months. . . . So you'll have to put a pin in that one for later and think of something feasible for right now and for tomorrow." HAMBLEY suggested, "Maybe . . . shower to get ready for them leaving.. followed by towels and stuff... after you turn the camera on. . . . Get something in her hair and use that as an excuse to get it out."



21.    The defendant asked HAMBLEY if he intended to record the shower video as he watched it. HAMBLEY, to confirm the defendant's meaning, asked the defendant, "So you'd setup the webcam... and put it in so i could watch the showers?" The following conversation ensued:

| | |
|---|---|
| DEFENDANT: | I'm also warning you, that if you recorded it, that I own you. As much as you own me. |
| HAMBLEY: | Agreed! |
| HAMBLEY: | Send me the log in and password to the webcam |
| DEFENDANT: | I know you, and I know you will, hence the warning. |
| HAMBLEY: | I'm fine with you having dirt on me.. and me having it on you.. |
| DEFENDANT: | Once you do that, you are literally stuck with this crazy groomed bitch for the rest of your life. |
| DEFENDANT: | Literally more permanent than any marriage |
| DEFENDANT: | And I will NOT accept it as a substitute for a real wedding either. |
| DEFENDANT: | It's not even about money any more Cory. |
| DEFENDANT: | If we do this, you're saying "for life" |
| DEFENDANT: | I'm good with that, and have been for 20 years... |
| DEFENDANT: | But I need you to say it. |

* * *

| | |
|---|---|
| DEFENDANT: | Also... this [camera] doesn't use a battery it's wall plug style |
| DEFENDANT: | The only place I can hide it, is the basket on top of the drawers, on the opposite side of the mirror from the outlet. I'm trying to figure out how to make it NOT look like there's something hiding in the basket that is plugged in... |
| DEFENDANT: | Fucking shit fuck |
| DEFENDANT: | Just so that we're clear... in the very near future... you're going to have to come up with a solution for a bathroom camera that is |



unobtrusive and easily hidden, decent storage
if need be, without cords, and a good battery
life. Because this is fucked[.]

22.    As they arranged, the defendant captured a video of MV1 and MV2 showering on or about February 10, 2023. The defendant told HAMBLEY, "I checked the settings... it was recording but I can't tell if the playback I'm seeing is the SD card or not? It's only .37 [gigabytes]?" HAMBLEY said, "I thought that was great!" But he had notes: "You didn't take the chance to clean them yourselves[.] I thought you could have been a little more hands on." When the defendant said that she washed their hair, HAMBLEY responded, "The drapes... but what about the carpet[?] Seriously though that was amazing."

23.    HAMBLEY commented on the girls' appearances:

| HAMBLEY: | They are both so Gorgeous |
| HAMBLEY: | They both remind me of you |
| HAMBLEY: | So mischievous |
| HAMBLEY: | And the older one [MV2] is so beautiful |
| | * * * |
| DEFENDANT: | But that's what our girls will look like |
| HAMBLEY: | I certainly hope so |
| HAMBLEY: | Except you'll be giving them more tongue bathes [sic] |

24.    On or about February 11, 2023, the defendant met HAMBLEY at a Walmart store near Gloucester, Virginia.

25.    On February 20, 2023, HAMBLEY told the defendant, "I want you [to] let her sleep in your room with you... and when she's passed out i wanna see you sneak a little taste of her..." The defendant responded, "But we both know the overt-things, are begging for jail time . . . Well, then ask me for shit like that AFTER we get married." Referring to HAMBLEY's request for her to perform a sexual act on MV2, the defendant said, "I'm not saying I wouldn't if



she were older, and asked me to . . . But I honestly want them to 'catch us' having sex and see if they watch, or freak, or both . . . Ideally both."

26.    HAMBLEY offered, "I will share a video of me cuming.. while i watch you lick a sleeping [girl] . . . Deal?" The defendant responded, "What happens if a kid wakes up and problems ensue? Doesn't seem like a fair trade." HAMBLEY replied vaguely, "I'll take care of you." The defendant wondered, "I don't know what kind of choice you're thinking you're offering? . . . Like, you want to help me pay for my last year of college? Maybe that would be worth it."

27.    On March 19, 2023, HAMBLEY asked the defendant to bathe MV1 and MV2 while he watched using the camera, so that "there won't be the problem of the shower curtain" that obstructed his view. The defendant volunteered that HAMBLEY had "missed someone take off her shirt in the front of the cam a while back." HAMBLEY admonished the defendant, "You should always tell me these things." Placating HAMBLEY, the defendant said, "Okay but Daddy, you have to give me clear directions... and you have to share what you're thinking more often (like you just did) so I know it's ok to intrude when you need space if it will please you."

28.    By this time, the defendant had fallen further into arrears on rent payments. On March 19, 2023, HAMBLEY said, "Well i offered to help with the rent... you told me not to send you money." The defendant asked, "Cory, would you please help?" She said that she needed $3,796. HAMBLEY said, "That's a lot of money . . . Are you willing to work for it? . . . Would you make me . . . videos? . . . [F]or that much money i need you to do things for me." When the defendant again asked HAMBLEY to marry her, HAMBLEY countered that marriage "is not relevant to this 4,000 dollar gift."



29.     On March 24, 2023, defendant repeated that she needed "the whole [$]3800" to pay her rent. HAMBLEY told the defendant to a record a video of MV1 and MV2 showering, directing her to "[m]ake sure you help them get soapy." Approximately 30 minutes later, the defendant said, "Soooo.... someone found the camera because I didn't hide it well. . . . I had to sneak it off and back on while she wasn't looking and missed a big chunk."

30.     HAMBLEY told the defendant to "tell me your plan." The defendant obliged, providing HAMBLEY a detailed description of how she intended to exploit MV1 and MV2 for HAMBLEY's sexual gratification:

> If we do the call, I have to set up the phone and call before they come in the bathroom and get in the shower, so you have to tell me when . . . Then tomorrow, we can dress up in my room in front of the cam, for Easter in the morning... and I can attempt to hang out naked, *because of the heat*, with them trying to do their hair. But again, the door has to be closed because that's always been a rule for people getting undressed, and since all . . . rules correspond to laws people follow... I can't just change the rules... But I can promise there will be as much touching, massaging, and rubbing as possible, both in the shower and on the bed. I can promise it will keep you hard while you watch, so you can cum, I just can't promise there will be fingering or more. Well, I'll try to finger myself. I dunno if they would copy me doing that.

31.     Records from Navy Federal Credit Union show that, on March 24, 2023, HAMBLEY transferred $3,800.69 to the defendant. On Signal, HAMBLEY said, "[T]hat was a one time thing.. it took nearly all my savings." The defendant thanked HAMBLEY. She added:

> You know I'm desperate Daddy. You know I need/needed the money today. You know I will do it if I say I will, but you know if you can't make the same sacrifices and meet in the middle, that there are lines I can't cross unless you cross them with me.

32.     On March 26, 2023, the defendant advised HAMBLEY, "[Y]ou miss a lot when you're sleeping..." The defendant was referring to the camera capturing MV1 and MV2 nude.

-9-



HAMBLEY asked, "What do i miss[?]" The defendant said, "Random changing clothes... usually on my bed... Sometimes one of them inspecting different things while it's all uncovered and out in the open . . . You definitely missed the conversation in the bathroom about why my [vagina] looks different than theirs."

33.    On April 2, 2023, the defendant told HAMBLEY, "I need some help with this weird itchy spot. It's super itchy, and I need someone to rub it for me with something long and hard." HAMBLEY responded, "Maybe you can have the youngest itch it," referring to MV1, who was then six years old.

34.    On May 3, 2023, over the course of approximately 40 minutes, the defendant sent 21 consecutive messages to HAMBLEY on Signal regarding the possibility of HAMBLEY having sex with MV2. The defendant said, "[MV2] has to be 15, you have to seriously wear a condom, it can only happen once, and it's still cheating so you have to earn a pass or I say NO."

35.    On May 7, 2023, the defendant told HAMBLEY that she planned to bathe MV1 and MV2. HAMBLEY told the defendant to send him "pics." The defendant captured then sent to HAMBLEY eight photographs of MV1 and MV2 nude in a bathtub, some of which were sexually explicit. In some of photographs, the pubic area of MV1 is visible. At the time, MV1 was six years old and MV2 was 10 years old.

36.    On or about May 12, 2023, the defendant told HAMBLEY that MV1 was in the defendant's bed, "passed . . . out." HAMBLEY told the defendant to "[t]ake [MV1's] clothes off" and "get a picture of your fingers on [MV1's]" vaginal area, explaining that "[defendant] touching sleeping [MV1] is [a] huge turn[-on] for me." HAMBLEY said, "[W]hat i want . . . Is for you to take a video of you licking her" vaginal area. The defendant initially said that the request was "[g]ross," but added that if HAMBLEY would have sex with the defendant, "then



I'll do it." The defendant then sent HAMBLEY a sexually explicit photograph of MV1's unclothed vaginal area.

37.     To this photograph HAMBLEY responded, "Mmm now lick her." The defendant then took and sent HAMBLEY a photograph of the defendant licking MV1's vaginal area. HAMBLEY asked for a "[c]ouple more please." The defendant said, "If [MV1] doesn't stay asleep... you owe me a fucking creampie." Then the defendant took and sent HAMBLEY another photograph of the defendant licking MV1's vaginal area.

38.     After sending the last-described photographs, the defendant said, "I'm guessing you came hard enough to pass out for the night..." When HAMBLEY woke up the next morning, he told the defendant that he had had "a massive orgasm last night." The defendant responded, "I hope so." Then, among 14 consecutive messages that the defendant sent HAMBLEY, she told him that she loved him.

39.     On or about June 23, 2023, HAMBLEY told the defendant, "You should go be [naughty] for me tonight . . . I wanna see you go into your bed and lick the lil again," referring to MV1, who was six years old at the time. The defendant asked, "And what's in it for me Daddy?" About 10 minutes later, HAMBLEY said, "Your [sic] going to have to record video of you doing this.. she's too far from camera." The defendant responded, "Last time was pics . . . And she's cold."

40.     The defendant captured and sent to HAMBLEY a video depicting the defendant holding MV1's labia apart as MV1 slept. Investigators recovered the video, metadata of which indicated that it was downloaded on June 23, 2023, from HAMBLEY's computer.

41.     The defendant captured and sent HAMBLEY videos of herself, MV1, and MV2 showering. In one of the videos, from which metadata showed that HAMBLEY saved it to his



computer on or about November 12, 2023, the defendant rubbed the breasts and nipples of MV2, who was 10 years old at the time. She did this using a pretext of cleaning MV2, but the defendant created the video, which was captured using a hidden camera placed near the top of the shower, for HAMBLEY's sexual gratification.

42.     In another video, metadata of which showed that HAMBLEY saved it to his computer on or about November 14, 2023, the defendant rubbed and shaved the vaginal area of MV2, who was then 10 years old. The defendant performed this operation at a speed slower than necessary, and occasionally turned MV2 to face the hidden camera, for HAMBLEY's sexual gratification.

43.     Toward the end of 2023, HAMBLEY's responses to the defendant's Signal messages began to taper off. Between November 17, 2023 and November 21, 2023, the defendant sent HAMBLEY 101 consecutive messages before HAMBLEY finally responded with a single message of his own. Then the defendant sent a further 13 consecutive messages between November 21, 2023 and November 23, 2023 before HAMBLEY responded two days later, on November 25, 2023. On that day, HAMBLEY told the defendant, "Thank you sending for that[.]" HAMBLEY asked whether the defendant had a good night and she replied that she did not. HAMBLEY said, "Looks like you did."

44.     On HAMBLEY's computer, investigators located two videos whose metadata indicate that they were downloaded on November 25, 2023: one video that depicted the defendant performing oral sex on MV1, and another that depicted the defendant performing oral sex on MV2.

45.     On December 8, 2023, HAMBLEY and the defendant discussed how the defendant could send a 51-minute video depicting MV1 and MV2 showering to HAMBLEY,



given the video's large file size. The defendant proposed "offload[ing] it to a memory card and give you that." Referring to Google Drive, HAMBLEY said that the defendant "could do it via Google . . . I'll send you a folder than you can share it into.. how's that? . . . You can put it directly into mine!"

46.     HAMBLEY then sent the defendant a link to a Google Drive folder. The defendant responded, "It made me send some kind of request," and HAMBLEY said, "I approved your request . . . now only Me and You have access to that . . . put all of the files there for me..." The defendant answered, "Yes Sir." When HAMBLEY became impatient at having received the file soon enough, the defendant reminded him, "I know Daddy, but I have wifi off . . . . I'm NOT uploading those on public wifi. PERIOD. . . . For a guy who is smart you forget stuff that could be really really really bad." The next day, as she continued to try to upload the file to Google Drive, the defendant said, "[J]ust let me know when you download them, and I'll delete them from my drive, because I do not have the space to keep them all in there... and well... neither of us should be keeping those files on an internet server too long...." Later, the defendant confirmed, "They're all uploaded Daddy... At least the newer ones with this phone... I don't have the first shower show on my phone, because I deleted a bunch of stuff."

47.     On a Dell Optiplex computer that was seized lawfully from HAMBLEY, investigators located a 51-minute video with the filename **20231113_211830.mp4** that depicted the defendant showering with MV1 and MV2 and shaving MV2's vagina. Investigators believe that this video is the original, uncut video a clip of which, described in paragraph 43, the defendant had sent to HAMBLEY on or about November 14, 2023.[2]

---

[2]     The format of the filename suggests that the video file was created on November 13, 2023.

-13-

48. In or about November 2024, Virginia Beach Police Department and child protective services performed a welfare check at the defendant's residence after HAMBLEY admitted to law enforcement that the defendant had sent him media depicting the sexual exploitation of MV1 and MV2. At the time of the welfare check, the defendant had plans to fly to Texas to meet her new boyfriend. After the welfare check, her plans were modified so that she could depart sooner.

49. On or about December 12, 2024, the defendant was arrested in El Paso, Texas, and later extradited to answer charges in Virginia Beach. When she was arrested, the defendant had two cell phones that were seized and searched lawfully pursuant to warrants. The content of the messages in this Statement of Facts is derived from the data on the defendant's phone.

50. The internet is a means and facility of interstate and foreign commerce.

51. The internet-connected cell phone that the defendant used to communicate with HAMBLEY used facilities and means of interstate and foreign commerce, and was mailed, shipped, or transported in and affecting interstate and foreign commerce.

52. Relying on the internet to transmit data, Signal is a means and facility of interstate and foreign commerce.

53. As a cloud-based storage service that uses the internet, Google Drive is a means and facility of interstate and foreign commerce.

54. The evidence and investigation confirm that, between on or about January 5, 2023, and on or about October 22, 2024, in the Eastern District of Virginia and elsewhere, the defendant knowingly and willfully conspired and agreed with HAMBLEY to knowingly employ, use, persuade, induce, entice, and coerce minors, namely MV1 and MV2, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and the



defendants knew and had reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and such visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and such visual depictions had actually been transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e).

55.     This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

56.     The actions of the defendant, as recounted above, were in all respects knowing and deliberate and were not committed under duress, by mistake or accident, or other innocent reason.

Respectfully submitted,

Lindsey Halligan
United States Attorney

By: _____

E. Rebecca Gantt
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office: (757) 441-6331
Fax: (757) 441-6689
E-Mail: rebecca.gantt@usdoj.gov

-15-



After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Grace Elizabeth Paradis, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Grace Elizabeth Paradis

I am counsel for the defendant. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Brian M. Latuga
Attorney for Grace Elizabeth Paradis

