IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:25-cr-44 |
| | ) | |
| GRACE ELIZABETH PARADIS, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND MOTION FOR ACCEPTANCE OF RESPONSBILITY DECREASE**

The United States of America, by and through its attorneys, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines").

There are no objections to the Presentence Investigation Report ("PSR"), which correctly determined an offense level of 48 (well above the maximum end of the guidelines table of 43) and criminal history category of I, resulting in an advisory guidelines range of life imprisonment. This range is restricted by the statutory maximum penalty of 30 years. Considering the applicable sentencing factors under 18 U.S.C. § 3553(a), the government submits that a sentence of imprisonment of 30 years would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

This sentence is necessary to protect the public from the defendant and to punish her for her abhorrent conduct. The defendant groomed and abused defenseless children to try to entice Hambley into marriage. She recorded herself repeatedly sexually molesting two girls, 5 and 9 to 6 and 10 years old, including showering with the girls and rubbing their breasts, shaving their pubic areas, and orally sodomizing them while they slept, on multiple occasions, and sent the

recordings to Hambley. She also drew up a "contract" specifying rules for grooming and molesting future children she and Hambley would have together.

## I.      Procedural Background

On April 16, 2025, a grand jury returned an indictment charging the defendant with seven counts: conspiracy to produce visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) (Count 1), two counts of production of child sexual abuse material, in violation of 18 U.S.C. § 2251(a) (Counts 2 and 3), one count of distribution of child sexual abuse material, in violation of 18 U.S.C. § 2252(a)(2) (Count 5), one count of transportation of child sexual abuse material, in violation of 18 U.S.C. § 2252(a)(1) (Count 9), and two counts of use of an interstate commerce facility to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Counts 10 and 11). ECF No. 3. The defendant was arrested on April 29, 2025, had her initial appearance the same day, and was ordered temporarily detained. ECF No. 18. On May 6, 2025, the defendant was arraigned and waived her right to an immediate detention hearing, and was ordered detained pending trial. ECF No. 29.

On October 23, 2025, the defendant pleaded guilty before the Court to Count One. ECF No. 60. The Court initially scheduled the sentencing hearing for February 25, 2026, ECF No. 60, but continued the sentencing hearing to May 2026 at the defendant's request to allow "sufficient time to complete psychological testing and reports for use at sentencing in mitigation," ECF No. 67 at 1, ECF No. 66. As of this filing, no such test results have been provided to the government, or are noted in the PSR.

On January 21, 2026, the U.S. Probation Office filed a PSR which calculated the defendant's total offense level as 48 and her criminal history category as I, resulting in a guidelines range of life imprisonment which was restricted by the statutory maximum penalty to 30 years.

2

ECF No. 69 ¶¶ 106 & 107.  There were no objections, and the final sentencing PSR, filed on May 13, 2026, maintained the same calculations.  ECF No. 88 ¶¶ 106 & 107.

## II.    Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility

The defendant has assisted authorities in the investigation and prosecution of her own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.  USSG § 3E1.1(b).  The PSR has properly applied a two-level decrease in the offense level for acceptance of responsibility under USSG § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater.  PSR ¶ 47.  Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).  This reduction is already reflected in the PSR's offense level calculation.  PSR ¶ 49.

## III.    The Statutory Sentencing Factors

### A.    The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

The defendant's offense conduct is, like that of her co-defendant Hambley, diabolical.  Investigators obtained a search warrant for Hambley's home in Water View, Virginia, in November 2024, following a tip from the National Center for Missing and Exploited Children (NCMEC) that he had shared child sexual abuse material (CSAM) on the social media application X.  Hambley admitted to receiving videos of "inappropriate touching" of two girls, MV1 and MV2, from the defendant, his ex-girlfriend.

Thereafter, child protective services performed a welfare check at the defendant's home in Virginia Beach.  After the visit, the defendant moved up plans she had to travel to Texas to meet a new boyfriend, and was eventually arrested in Texas in December 2024 and extradited to

Virginia. On her phone, agents found a slew of text and Signal messages with Hambley.[1] The defendant agreed to speak with agents and claimed she had been raped and threatened by Hambley. When confronted with the images of her sodomizing MV1 and MV2, the defendant falsely denied engaging in such conduct.

The defendant and Hambley's messages showed that Hambley re-initiated contact with the defendant in November 2022, and thereafter they exchanged hundreds and hundreds of messages for a year. They quickly began discussing the potential sexual abuse of MV1 and MV2, who were then 5 and 9 years old, respectively. Early on, Hambley noted he "like[d] incest stuff" and suggested the defendant set up the camera he bought for her to record herself in the shower with MV1 and MV2. He told her he wanted to see if "their pussy is a[s] pretty as yours."

Throughout their ensuing relationship, the defendant leveraged Hambley's sexual interest in MV1 and MV2 to try to get him to commit to marriage and future children with her. And when the defendant expressed reluctance as to any of Hambley's requests, it was framed as concern with being caught, not concern with the wrongfulness of her actions or the potentially devastating impact on MV1 and MV2. Throughout the conversations, the defendant also expressed how incest activities would provide her with her own sexual gratification, noting, for example, that she hoped MV1 and MV2 would catch her and Hambley having sex.

In February 2023, after the defendant revealed she was behind on rent, Hambley said he could get her a check if she would send him images of MV1 and MV2. After the defendant expressed worries that they might notice what she was doing, Hambley proposed that she drug the children with Benadryl or roofies, to which she responded he was trying to get her put in jail. The defendant recorded a video of MV1 and MV2 showering later that month, and Hambley told her

---

[1] A PDF extraction of these messages with text only, which was provided to the defendant in discovery, spans 4,919 pages.

that although it was "amazing," the defendant "could have been a little more hands on" and in addition to washing the children's hair, should have washed their public areas.   When having difficulties setting up the camera in the bathroom, the defendant admonished Hambley that "in the very near future… you're going to have to come up with a solution for a bathroom camera that is unobtrusive and easily hidden."

About a week after the first shower recording, Hambley said he wanted one of the victims to sleep in the room with the defendant "and when she's passed out i wanna see you sneak a little taste of her."  He offered to exchange a video of himself ejaculating in exchange for watching the defendant orally sodomize either of the girls.  The defendant responded that it wasn't a "fair trade" but that maybe it would be "worth it" if he agreed to pay for a year of her college.  In March 2023, Hambley agreed to send the defendant money for rent after telling her she needed to do things in exchange, like showering with MV1 and MV2 and getting them "soapy."

In early May 2023, the defendant and Hambley discussed the prospect of Hambley having sex with MV2.  The defendant agreed it could happen when MV2 was 15, so long as the defendant wore a condom, but noted that it was "still cheating."  Later that month, after the defendant revealed the younger girl, MV1, had passed out in the defendant's bed, Hambley told the defendant to strip MV1 and take a picture of her with her fingers on MV1's genitalia, and to take a video of her "licking" MV1, which the defendant did.  The next morning, Hambley told the defendant he had "massive orgasm" as a result, to which she responded "I hope so."  The following month, Hambley told the defendant he wanted to see her "lick the lil again," to which she responded, "what's in it for me Daddy?"

On Hambley's electronic devices, investigators located multiple depictions of MV1 and MV2's abuse, including both being orally sodomized and also being rubbed, shaved, and bathed

5

by the defendant.  This conduct continued for a year–in December 2023, the defendant and Hambley discussed how to transfer an hour-long video of MV1 and MV2 showering.[2]

The defendant and Hambley's messaging also revealed they were discussing a contract that detailed the sexual requirements of their own relationship and also the grooming and sexual abuse that they would inflict on MV1, MV2, and their future children.  For example: "Early sexual training begins at birth with the placement of security cameras so that the children grow up with a sense that they are normal, and the inclusion of practicing open nudity and encouraging the children to watch their parents engage in sexual training.  Early training includes . . . getting on your knees in front of the person to ask permission to suck Daddy's cock or eat Mommy's pussy . . . ."

B.  The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The defendant is 43 years old and was born in upstate New York.  None of her family members spoke with the U.S. Probation Office, PSR ¶¶ 62–64, so the personal and familial background described in the PSR, and summarized here, is unverified and based almost entirely on the defendant's own reporting.  The defendant's parents were married but separated when she was very young.  Until she was 6 years old, she lived with her mother and stepfather in New York, and states she was repeatedly sexually[3] and physically abused.  From ages 6 to 14, she reports having a "normal life" free of abuse with maternal family members in Texas.  Then, she returned

---

[2] Depending on the arguments in the defendant's position paper, the government may call a case agent at sentencing to briefly testify regarding the communications between the defendant and Hambley.

[3] To the extent the defendant argues her extreme conduct can be attributed to being sexually abused as a child, a 2015 American Medical Association study concluded that "[t]he widespread belief that sexually abused children are uniquely at risk to become sex offenders was not supported by prospective empirical evidence."  Cathy Widom et al., *A Prospective Examination of Whether Childhood Sexual Abuse Predicts Subsequent Sexual Offending*, *JAMA Pediatr.* 2015;169(1):e143357. doi:10.1001/jamapediatrics.2014.3357 (Jan. 5, 2015).

to live with her mother, during which time she was temporarily homeless, and then became legally emancipated at 16.

Both of her parents are deceased (her father in 2015 and her mother in 2022). The defendant has three siblings: two older brothers and a younger brother, as well as a brother who died as a child. She previously had a close relationship with one of her older brothers, but he is not supportive of her given her current charges. The defendant has not had contact with her other brothers for years. She also has a younger half-brother, an older half-brother, and three step-siblings. She has not had contact with these siblings for years other than her older half-brother, who is not supportive of her given her current charges.[4] She did not report any criminal history for any of her siblings.

The defendant was married to her first husband in 2003; they divorced 3 years later and had two sons together, both of whom are young adults who live in Tennessee. The defendant married her second husband sometime thereafter. They have one daughter together, a minor. The defendant filed two restraining orders against her second husband citing a history of domestic abuse. The defendant married her third husband in 2016, from whom she is also divorced. They had one daughter together, a minor, who lives with her father, together with her half-sister. The defendant also reports having dated her co-defendant, whom she says raped her.

Regarding physical health, the defendant reports having high blood pressure, for which she is prescribed medication. She also reports having a heart attack in 2023, but hospital records reflect that she was not admitted to the hospital but given a cardiology referral and was ultimately

---

[4] While the defendant reported she and her siblings lived together throughout her childhood, according to information from defense counsel, one brother stated the defendant was removed from the home at a young age that they have had little contact since. Further, while the defendant stated she and this brother were close and last had contact in September 2025, according to information from defense counsel, they have not spoken in 10 years.

diagnosed with hypertension.   As to mental health, records reflect mental health diagnoses of ADHD, anxiety, PTSD, and mood disorder.  The defendant does not have a history of substance abuse.

The defendant reports obtaining her GED in 2000 and attending college from 2008 to 2011, with a major in electronic technology and GPA of 3.34.  She served in the United States Navy for less than a year, from 2001 to 2002, and reports being medically discharged.  She has no disability rating with the VA.  The defendant was unemployed for long periods of time, but was a contracts administrative assistant for three years, from 2018 to 2021, when she was terminated for poor performance.

To his credit, the defendant has no criminal history, and her criminal history category is accordingly I.

C.  The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

The defendant's offense is indisputably serious because she sexually abused very young children for nothing more than her own sexual gratification, for money, and to attempt to secure a relationship with Hambley by sending him recordings of the abuse.  She expressed no concern that doing so required her to violate of the most basic tenets of human relationships.  "[D]istrict courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that child pornography crimes are serious offenses deserving serious sanctions."  *United States v. Morace*, 594 F.3d 340, 347 (4th Cir. 2010) (cleaned up).

D.  The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

A substantial sentence is warranted to specifically deter the defendant and thereby protect the public.  The defendant repeatedly discussed concerns with getting caught and going to jail in

her messaging with Hambley, which did not appear to deter her. Because the defendant deliberately engaged in some of the most depraved child sexual abuse activity imaginable repeatedly for a year, she is in need of a substantial sentence to specifically deter her from future conduct.

E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While incarcerated, the defendant would likely benefit from sex offender treatment, mental health treatment, and vocational or post-secondary education opportunities.

F. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence for Count One, 18 U.S.C. § 2251(a), is a mandatory minimum of fifteen years and up to thirty years of imprisonment. 18 U.S.C. § 2251(e). A term of supervised release is required for a minimum of five years, and may be imposed for life. 18 U.S.C. § 3583(k).

Regarding special assessments, the $5,000 under the Justice for Victims of Trafficking Act of 2015 ("JVTA") for non-indigent defendants, 18 U.S.C. § 3014, is potentially applicable. The defendant may also be ordered to pay up to $50,000 mandated for defendants convicted of offenses involving the production of child pornography under 18 U.S.C. § 2259A(a)(3), the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA"). PSR at 38. The AVAA special assessment should be determined by reference to the factors in 18 U.S.C. §§ 3553(a) and 3572, *id.*, and provides assistance to victims of child sexual abuse offenses. *See* United States Department of Justice, *Defined Monetary Assistance Victims Reserve*, https://www.justice.gov/dmavr.

G.  The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

The defendant is the second defendant to be sentenced in this case.  The Court sentenced her sole co-defendant and co-conspirator, Cory Hambley, to 35 years of imprisonment.  ECF No. 85.  A higher sentence is appropriate for Hambley, as he engaged in other child exploitation beyond that of MV1 and MV2, whereas the defendant's exploitation was limited to MV1 and MV2.  As a result of this additional abuse, Hambley had a slightly higher offense level of 49, compared to the defendant's offense level of 48.  As to the abuse of MV1 and MV2, however, the government views the defendant and Hambley as having similar culpabilities: although Hambley received a 2-level leadership enhancement, the defendant received her own two-level enhancement, which Hambley did not.  PSR ¶¶ 27 & 37.  This enhancement reflects a highly aggravating factor unique to the defendant.  *Cf. United States v. Lattimore*, 454 F. App'x 165, 167 (4th Cir. 2011) (noting that "this court, along with the majority of the circuits, has recognized that § 3553(a)(6) is aimed at eliminating national sentencing disparities, not disparities between codefendants").

To the extent the defendant relies on sentences in other individual cases or statistical evidence, "[t]he requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court."  *United States v. Sueiro*, 59 F.4th 132, 142 (4th Cir. 2023).  *Cf. United States v. Abed*, 3 F.4th 104, 177 (4th Cir. 2021) (cautioning against reliance on statistics, and explaining that such information "hardly presents an apples-to-apples-comparison").  Should the Court consider sentences in other individual cases, the government would note that a 30-year sentence is appropriate in comparison to *United States v. Friend*, EDVA Case No. 2:22-cr-42-JAG.  There, the Court imposed a sentence of life imprisonment following a guilty plea, where the defendant

had orally sodomized a minor victim of a similar age to MV1 and MV2, with whom the defendant had a similar relationship as exists between Ms. Paradis and her victims.

H.  The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))

In her plea agreement, the defendant agreed that restitution was mandatory, and to the entry of a restitution order for the full amount of the victims' losses.  ECF No. 61 ¶ 11.  The defendant further agreed that pursuant to 18 U.S.C. § 3663(a)(3), victims of the conduct described in the charging instrument, Statement of Facts, or any related or similar conduct are victims within the meaning of 18 U.S.C. § 2259(c) and § 2429(d), and are entitled to restitution.  *Id.*

The government has received restitution requests on behalf of MV1 and MV2 for therapy needs, and anticipates presenting a restitution order to the Court at sentencing.  The defendant did not possess any other CSAM, so the requests from series victims for co-defendant Hambley are not applicable to her.

**IV.    Supervised Release Conditions**

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d).  In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR.  *Rogers*, 961 F.3d at 299.  Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions, as well as recommended special conditions, on pages 32 through 37 of the PSR.  The government requests that the Court impose all of those conditions.

11

## V.      Conclusion

For the reasons stated above, the government submits that a sentence of 30 years of imprisonment, which is within the restricted advisory guidelines range, would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

TODD W. BLANCHE
ACTING ATTORNEY GENERAL

By: _____/s/_____
E. Rebecca Gantt
Assistant United States Attorney
VSB No. 83180
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on May 14, 2026, I will send an electronic copy of the foregoing to the following:

Kalyn M. Monreal
United States Probation Officer


_____/s/_____
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov